IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Electric City Aquarium & Reptile   :
Den, LLC,   :
                    Petitioner   :
  :
           v.   :   No. 1551 C.D. 2024
  :   Argued: September 9, 2025
Pennsylvania Human Relations   :
Commission,   :
              Respondent  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT           FILED: November 20, 2025

Electric City Aquarium & Reptile Den, LLC (Employer) petitions for review of an adjudication of the Pennsylvania Human Relations Commission (Commission) holding Employer liable under the Pennsylvania Human Relations Act (Act)[1] for retaliation against its former employee, Rachel Lanning (Complainant). The Commission concluded that Complainant's complaint to Employer about a co-worker's conduct caused Employer to terminate her employment. On appeal, Employer argues that the Commission erred because the evidence did not establish a *prima facie* case of retaliation for opposing unlawful discrimination. In the alternative, Employer argues that Complainant did not establish that Employer's stated reasons for terminating Complainant's employment were pretextual. Upon review, we reverse the Commission.

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

## Background

Complainant worked for Employer as a reptile curator from September 2018 through October 11, 2019. She handled day-to-day management of scheduling, staff shows, and medical responsibilities. Employer never gave Complainant a job performance evaluation before discharging her on October 15, 2019.

At her job interview, Complainant asked Clifford Grosvenor (Grosvenor), Employer's owner, to hire Justin Elchynski (Elchynski), whom she knew from her prior employment at Clyde Peeling's Reptiland. As a result, Complainant and Elchynski were each hired as a reptile curator, under Grosvenor's direct supervision.

On October 4, 2019, Complainant spoke to Employer's director Melissa Rosevear (Rosevear) about Elchynski's behavior and asked Rosevear to sign a confidentiality agreement, which she did. On October 5, 2019, Complainant notified Rosevear that she intended to file a harassment complaint against Elchynski. To that end, Complainant gave Rosevear handwritten notes that Rosevear used to draft a complaint on behalf of Complainant, and it stated as follows:

> [Complainant] recently came to me to file a complaint regarding issues she is having with her team. She states her peer, [Elchynski], is harassing her. She cites the following concerns:
>
> - He belittles the way she speaks and if she does mis-speak he makes a big deal of it.
>
> - If she asks him to stop mocking her he continues to do so. In fact, sometimes it gets worse.
>
> - She does not feel he takes what she says seriously as he frequently dismisses her or cuts her off.
>
> - She feels the staff now does the same because they feel it is okay to do so.
>
> - She does not feel he values her work.

2

- She feels he believes he is her boss and he tends to do things his way.
- She states she has had a meeting with him regarding these issues and while she has asked him to stop multiple times it has not.
- On one occasion she states he continuously asked her to dance for he [sic] and Adam, a fellow employee. When she refused to do so and asked him to stop asking her, he did not.

Certified Record (C.R.), Exhibit C-4. On October 8, 2019, Complainant signed the complaint, and Rosevear informed her that a meeting with Elchynski would take place.

Later that same day, Complainant returned to Rosevear's office in an anxious and emotional state that led to a panic attack. Rosevear suggested that Complainant return home for the remainder of the day. That evening, Rosevear called Complainant to inform her that she would be given a week of paid leave to decompress and to allow an investigation into her complaint. Complainant texted Rosevear to ask whether her job was at risk, and Rosevear responded in the negative.

On October 10, 2019, Complainant sent Rosevear an email expanding on the handwritten bullet points she had earlier provided Rosevear. That email stated that Elchynski bullied her about her "[A]mish background" and "speech problems," and he encouraged others to do the same. C.R., Exhibit C-3, at 1. In addition, "[r]oughly a week ago," Complainant "walked into a conversation about the 'Floss dance'" when she entered the "snake room." *Id*. at 2. Elchynski asked her to do the dance and tried to bribe her to do it; Complainant refused and walked out. *Id*. Finally, the email stated that Elchynski and another co-worker, Adam Morris (Morris), commented on the dress that she wore at the Christmas party and "how [her] boobs were out." *Id*.

3

Later that day, Complainant texted Rosevear, offering to work on Friday and Saturday so that Elchynski could have the weekend off. Rosevear replied that the offer was appreciated but that they had "it covered." C.R., Exhibit C-6, at 4.

On October 11, 2019, Rosevear called Complainant to inform that due to "business being considerably slow recently," the decision was made to "issue a lay-off" to her. C.R., Exhibit C-7.

On November 7, 2019, Complainant filed a complaint with the Commission, asserting that she had been the victim of unlawful sex discrimination (Count I) and unlawful retaliation (Count II). The complaint alleged that Employer had a "male dominated culture," referred to as the "boys' club;" favored male employees; and subjected Complainant to "regular and routine verbal abuse from employees" including Elchynski. C.R., Exhibit C-1, at 2, ¶10. The complaint alleged that Elchynski sexually harassed Complainant at work by "telling her that she 'looked good' since she had lost weight, routinely saying to her 'All you need is a handful' referencing women's breasts, and citing the 'boy's club'" in reference to her exclusion from meetings or projects. *Id*. at 3, ¶12. On one occasion, while Elchynski was engaged in a discussion of "poop" with two other male employees, he "asked Complainant which poop she would eat if she was forced to do so." *Id*. at 4, ¶19.

On April 3, 2024, a hearing examiner conducted a hearing on the above summarized complaint. At the hearing, Complainant, Elchynski, Morris, Grosvenor, and Employer's business manager, Margaret Daniels, all testified. The salient testimony is summarized in the discussion on the hearing examiner's proposed adjudication that follows.

4

## Proposed Adjudication

### I. Count I (Unlawful Sex Discrimination)

On Count I, the hearing examiner concluded that Complainant established a *prima facie* case of employment discrimination under Section 5(a) of the Act, 43 P.S. §955(a). However, Employer established a non-discriminatory reason for Complainant's discharge, and Complainant did not show that the stated reason was pretextual. In so holding, the hearing examiner applied the burden shifting paradigm in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) (*McDonnell Douglas*).

Under *McDonnell Douglas*, a *prima facie* case of sex discrimination requires the complainant to prove that: (1) she is a member of a protected class; (2) she was performing at a satisfactory level; (3) she was discharged; and (4) she was treated differently due to her protected class. The hearing examiner found that Complainant, a female, is a member of a protected class, never received an unsatisfactory evaluation, and was discharged; on the other hand, Elchynski, a male, was permitted to continue working and was promoted in 2020. Because Complainant made a *prima facie* case of sex discrimination, the burden shifted to Employer to articulate a "legitimate, non-discriminatory reason" for taking the adverse action. *McDonnell Douglas*, 411 U.S. at 802.

Grosvenor testified that his decision to terminate Complainant was not related to her sex but to the aquarium's declining revenue that required him to lay off both men and women. This testimony was supplemented by testimony from Daniels, the business manager, and by Employer's financial records, which were admitted into evidence. Grosvenor explained that the aquarium only needed one reptile curator and that he retained Elchynski because "[Complainant] was good at

defining the problems, but [Elchynski] was good at fixing the problems." Notes of Testimony, 4/3/2024, at 133 (N.T. __); Reproduced Record at 160a (R.R. __). "[Complainant] would lash out at teachers" and chaperones about student behavior, whereas Elchynski "would handle it a lot more professional[ly.]" *Id.* Grosvenor also testified that other staff had complained about Complainant, but he had not received any complaints about Elchynski. Finally, Grosvenor explained that Elchynski worked through issues more independently than Complainant, who would request several meetings a week.

The hearing examiner found that Employer offered a legitimate, non-discriminatory reason for discharging Complainant. The burden then shifted to Complainant to demonstrate that the non-discriminatory reason was pretextual. *McDonnell Douglas*, 411 U.S. at 804.

The hearing examiner reasoned that to meet her burden, Complainant had to "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find it unworthy of credence.'" Proposed Adjudication at 15 (quoting *Krouse v. American Sterilizer Company*, 126 F.3d 494, 504 (3d Cir. 1997)). Complainant testified that Employer expanded a snake room at a cost of $100,000. However, Complainant provided no information that the funds spent on the snake room would have been sufficient to retain all employees or resolve the aquarium's financial issues. Accordingly, the hearing examiner concluded that Complainant failed to show that Employer's proffered legitimate reasons for her discharge were pretextual.

On the other hand, the hearing examiner found Complainant's testimony rife with inconsistencies. Regarding the alleged "boys' club,"

6

Complainant conceded that Elchynski sought her input on matters in which she had not been part of the discussion thereon. Further, as of October 2019, Employer's work force was "predominantly female." N.T. 116; R.R. 143a. Grosvenor, Elchynski, Daniels, and Morris all denied ever hearing the term "boys' club" used in the workplace.

Complainant testified that Elchynski "found flaws in everything," including her work. N.T. 81; R.R. 108a. However, Morris, another co-worker who was also laid off, testified that because the aquarium served an educational purpose, Complainant needed to be corrected when she used the wrong terminology. N.T. 121; R.R. 148a.

Complainant alleged that Elchynski made a statement about her breasts after the 2018 Christmas party, which Elchynski denied in his testimony. For her part, Complainant conceded that she "believe[d] he spoke it to another person, but [] cannot confirm that." N.T. 83-84; R.R 110a-11a. Morris testified that he did not witness any ridicule of Complainant; rather, it was Complainant who asked him to "end a debate" on whether her "boobs [were] sticking out" at the Christmas party. N.T. 115; R.R. 142a. This made him uncomfortable because there were other female colleagues in the room.

As to the floss dance, Elchynski conceded that he may have asked Complainant to do it when it came up in conversation but denied pressuring or bribing her. Even so, Complainant admitted that she did the floss dance for female employees and that there was nothing sexual about the dance.

Regarding the "poop" question, Morris testified that it stemmed from conversation about specialty coffee brewed from the feces of a feline species. N.T. 118; R.R. 145a. The question about which fecal matter would be appetizing was

being deliberated by all in the group before Complainant entered the room, and she was asked the same question. Complainant did not appear to be offended.

The hearing examiner concluded that the evidence did not show that "the culture and employee behavior at [Employer] were discriminatory based on [Complainant's] sex, or sexual in nature." Proposed Adjudication at 17. Likewise, the hearing examiner concluded that "[t]here is no information or legal reasoning provided to support a finding of either *quid pro quo* or hostile work environment sexual harassment[.]" *Id*., n.2. The hearing examiner concluded that Complainant waived her claim of sexual harassment and did not prove sex discrimination.

## II. Count II (Retaliation)

On Count II, the hearing examiner concluded that Complainant made a *prima facie* case of retaliation under Section 5(d) of the Act, 43 P.S. §955(d). To prove retaliation under *McDonnell Douglas*, the complainant must establish that: (1) she was engaged in a protected activity; (2) her employer was aware of the protected activity; (3) subsequent to participation in the protected activity, the complainant was subject to an adverse employment action; and (4) there is a causal connection between participation in the protected activity and the adverse employment action. *Spanish Council of York, Inc. v. Pennsylvania Human Relations Commission*, 879 A.2d 391, 399 (Pa. Cmwlth. 2005).

The hearing examiner found that Complainant's oral report of harassment to Rosevear and subsequent written complaint of October 8, 2019, constituted a protected activity. The hearing examiner found that the seven days between her oral complaint and her termination was "unduly suggestive" of a retaliatory motive and showed that the complaint caused her discharge. Proposed Adjudication at 20. The hearing examiner opined that a retaliation claim may

8

succeed even where no actual sex discrimination occurred, provided that the complainant has a reasonable, good-faith belief that such discrimination took place. *Id*. at 18 (citing *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005) (*Birmingham Board of Education*)).

In response, Employer again offered the aquarium's finances as the legitimate, non-discriminatory reason for terminating Complainant's employment. However, this time the hearing examiner found the proffered reason pretextual. Grosvenor testified that he began looking at Employer's financials in September 2019 and informed both Complainant and Elchynski that "we need to downsize," but he did not inform Complainant that downsizing could include a layoff of employees. N.T. 150; R.R. 177a. Grosvenor testified that it took him about two days to investigate Complainant's complaint, N.T. 161; R.R. 188a, and he concluded that Complainant and Elchynski were "two friends [who] were joking around and [that] it just needed to stop." N.T. 151; R.R. 178a. However, Grosvenor did not so inform Complainant before terminating her employment.

The hearing examiner concluded that Complainant proved that Employer engaged in unlawful retaliation by suspending and then terminating her employment in violation of Section 5(d) of the Act, 43 P.S. §955(d).

## Commission Adjudication

On October 28, 2024, the Commission accepted the hearing examiner's recommendation, adopting *in toto* her findings of fact and conclusions of law. The Commission ordered Employer to cease and desist from engaging in employment retaliation and to pay Complainant $66,268.03 in backpay and interest of 6% per annum.

9

Employer petitioned for this Court's review.

## Appeal

On appeal,[2] Employer raises two issues for our review. First, Employer argues that the Commission erred in concluding that Complainant established a *prima facie* case of retaliation under Section 5(d) of the Act, 43 P.S. §955(d). Second, and in the alternative, Employer argues that the Commission erred in its application of the burden shifting paradigm in *McDonnell Douglas* to Complainant's retaliation claim.

## I. Prima Facie Case of Retaliation

Employer argues that the Commission erred in concluding that Complainant established a *prima facie* case of retaliation because Complainant did not satisfy the first element, *i.e.*, she was engaged in protected activity. The hearing examiner found that Complainant's protected activity was "reporting harassment to [Rosevear]" and then "signing a written complaint against Elchynski on October 8, 2019." Proposed Adjudication at 18. However, these reports did not assert that the so-called "harassment" constituted unlawful sex discrimination.

Employer notes that Complainant testified that on October 5, 2019, "I went to [Rosevear] and I said that I needed it to stop and that I wanted to officially report harassment." N.T. 27; R.R. 54a. This testimony did not mention sex discrimination. Likewise, Complainant's testimony about her earlier encounter with Rosevear on October 4, 2019, did not describe sex discrimination. Further, the written complaint signed by Complainant on October 8, 2019, did not mention sex discrimination or sexual harassment. The "only arguably sexual point" in that

---

[2] "This Court's review of a Commission matter is whether the adjudication is in accordance with law, whether constitutional rights have been violated or whether the findings of fact are supported by substantial evidence." *Spanish Council of York, Inc.*, 879 A.2d at 397 n.15.

10

complaint was the claim that "on one occasion" Complainant was asked to dance. Employer Brief at 13-14 (citing C.R., Exhibit 4). However, Complainant later testified that this was referring to the "floss dance," which she had performed for other co-workers and conceded that there was nothing sexual about the dance. N.T. 90-91; R.R. 117a-18a.

Employer observes that the October 8, 2019, complaint alleged that Elchynski was belittling, dismissive, bossy, or critical of Complainant's misspeaking at work. It did not assert sexual harassment or sex discrimination "forbidden by this act," as required in Section 5(d) of the Act, 43 P.S. §955(d). Complainant could not have reasonably and in good faith believed that her October complaints, oral and written, constituted a report of unlawful discrimination or sexual harassment. The hearing examiner's conclusion that Complainant was engaged in protected activity is not supported by substantial evidence and, thus, the Commission erred in adopting this finding.

In response, the Commission argues that Complainant was engaged in protected activity when she presented her notes to Rosevear, who used them to draft a complaint. Accordingly, the Commission properly applied the four elements of the *prima facie* case articulated in *McDonnell Douglas*, 411 U.S. 792. Further, the United States Supreme Court has held that a retaliation claim may succeed where, as here, the complainant fails to prove actual sex discrimination or harassment occurred, provided the complainant had a reasonable, good-faith belief that such discrimination took place. Commission Brief at 13 (citing *Birmingham Board of Education*, 544 U.S. 167).

We begin with a review of the applicable legal principles. The Act makes it unlawful to discriminate against an employee who opposes unlawful discrimination. Section 5 of the Act states, in relevant part, as follows:

> *It shall be an unlawful discriminatory practice*, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:
>
> > (a) *For any employer because of* the race, color, religious creed, ancestry, age, *sex*, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or *to discharge from employment such individual* or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required[.]
> >
> > . . . .
> >
> > (d) *For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act*, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 P.S. §955 (emphasis added). In interpreting the Act, Pennsylvania courts may look to federal court decisions interpreting Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§2000e-2000e-17. *Foust v. Pennsylvania Department of Human Services*, 305 A.3d 1128, 1133 (Pa. Cmwlth. 2023).

12

The prohibition against sex discrimination in Section 5(a) of the Act "has been interpreted to include sexual harassment that is severe or pervasive enough to create a hostile work environment." *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees*, 956 A.2d 477, 484 (Pa. Cmwlth. 2008). Such an environment "occurs when unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile or offensive working environment." *Hoy v. Angelone*, 691 A.2d 476, 480 (Pa. Super. 1997).[3] An action for sexual harassment may proceed on the theory of "quid pro quo," which occurs where "an individual's submission to or rejection of [sexual] conduct is used as a basis for employment decisions affecting the individual." *Id*. at 480, n.5.

A *prima facie* case of retaliation under Section 5(d) of the Act requires a complainant to show: (i) she was engaged in a protected activity; (ii) her employer was aware of the protected activity; (iii) her participation in the protected activity was followed by an adverse employment action; and (iv) there was a causal connection between participation in the protected activity and the adverse employment action. *Spanish Council of York, Inc.*, 879 A.2d at 399. "Upon showing a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action." *Id*. (citing *McDonnell Douglas*, 411 U.S. 792). Finally, the burden shifts to the complainant to show that the employer's proffered reasons were pretextual. *Id*.

---

[3] In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

13

Employer argues that Complainant did not establish the first element of a retaliation claim, *i.e.*, that she was engaged in a protected activity of which Employer was aware prior to terminating her employment. It contends that Complainant's October reports to Employer did not identify a "practice forbidden by this act." Section 5(d) of the Act, 43 P.S. §955(d). Accordingly, her opposition thereto did not establish unlawful retaliation. We agree.

The hearing examiner held that Complainant was "engag[ed] in a protected activity and reporting harassment to [sic] before signing a written complaint against Elchynski on October 8, 2019." Proposed Adjudication at 18 (citing N.T. 27; R.R. 54a). However, the hearing examiner also found that Complainant waived her claim of sexual harassment because "[t]here is no information or legal reasoning provided to support a finding of either *quid pro quo* or hostile work environment sexual harassment[.]" Proposed Adjudication at 17, n.2. In dismissing Complainant's claim of sex discrimination, the hearing examiner cited both the "inconsistencies" in her testimony and the absence of evidence in the record that "the culture and employee behavior at [Employer] were discriminatory based on her sex, or sexual in nature." *Id*. at 17. The hearing examiner concluded that neither sexual harassment nor sex discrimination actually took place.

In support of the hearing examiner's rationale, the Commission argues that the protected activity was the "harassment complaint" presented to Rosevear on October 5, 2019. Commission Brief at 14 (citing R.R. 49a, 52a, 54a, 55a, 261a, and 263a). These record citations do not support the Commission's argument that Claimant was engaged in a protected activity.

Pages 261a to 263a of the Reproduced Record include Complainant's email sent to Rosevear on October 10, 2019, and the October 8, 2019, complaint;

14

however, the hearing examiner found that they did not establish sex discrimination.[4] The other pages of the reproduced record cited by the Commission consist of excerpts of Complainant's testimony, which include the following:

> [Counsel:] [W]hen did you complain to Missy Rosevear, the Director of Human Resources? What was her title?
>
> [Complainant:] She was the director of the aquarium.
>
> [Counsel:] Okay. The director of the aquarium. When did you complain to her, officially?
>
> [Complainant:] Officially, I wrote it down on paper. I'm trying to remember the date. I believe it was around the 7th of October.

N.T. 22; R.R. 49a. Complainant then testified:

> [Counsel:] So on October 4th you had a meeting with [Rosevear] after she signed [the confidentiality agreement]?
>
> [Complainant:] Correct.
>
> [Counsel:] And the meeting you had with her was about what?
>
> [Complainant:] I wanted to talk to her about whether or not I should report [Elchynski] for harassing me and what I deemed to be sexual harassment.
>
> [Counsel:] *And do you feel as though this discussion was the reporting of the harassment based upon your sex?*
>
> [Complainant:] *At that time it was not the official report.*

N.T. 25-26; R.R. 52a-53a (emphasis added). Shortly thereafter, Complainant testified:

> [Counsel:] And the all-staff meeting [on October 5, 2019], what occurred? What was the all-staff meeting about?

---

[4] Complainant's email to Rosevear was subject to the non-disclosure agreement that Rosevear signed. Complainant offered no evidence that the email was shared with Grosvenor, Employer's owner, as necessary to establish retaliation. To establish retaliation, the complainant must show that the report about a "practice forbidden by this act," 43 P.S. §955(d), was shared with the employer.

[Complainant:] The all-staff meeting was going over the handbook that finally came into place. We were going to go over certain sections, and employees had to sign that they received a copy of the handbook.

[Counsel:] Okay. So after the staff meeting, is that when you filed your complaint?

[Complainant:] *I went to [Rosevear] and I said that I needed it to stop and that I wanted to officially report harassment.*

[Counsel:] And what did [Rosevear] have you do at that time, anything?

[Complainant:] At that time she just said, okay. Are you sure about this? I said yes. And she gave me a hug. And that was - that was it.

[Counsel:] Did you meet with anyone else to discuss the harassment that you felt you were enduring?

[Complainant:] I had a meeting afterwards with Christina, who was the assistant director, and I went over everything with her.

[Counsel:] And just for clarification, after what? You said you had a meeting with Christina.

[Complainant:] After I spoke to [Rosevear].

[Counsel:] Was it on the same date, October 5th?

[Complainant:] I believe so.

[Counsel:] Okay. And why did you go to her?

[Complainant:] Because I just wanted to make sure I was doing the right thing, because I didn't want any consequences to happen to me.

[Counsel:] Okay. Were you contacted by [Rosevear] after October 5th concerning your allegation, the complaint, your harassment complaint against [Elchynski]?

[Complainant:] She stated that we were going to have a meeting. There was going to be a sit-down meeting with her, [Elchynski] and myself to go over the complaint.

[Counsel:] And when did she tell you this meeting was going to occur?

16

[Complainant:] I believe it was going to occur on Monday.

N.T. 27-28; R.R. 54a-55a (emphasis added).

The above testimony established, at most, that Complainant complained about Elchynski's behavior and that she termed the behavior "harassment." However, this "harassment" did not relate to her gender. Rather, Elchynski "found flaws" in her work, which may be rude but does not constitute harassment within the meaning of the Act. N.T. 81; R.R. 108a.

Nevertheless, the Commission contends that a retaliation claim may succeed where no actual sex discrimination has occurred, so long as the complainant has a reasonable, good-faith belief that such discrimination took place. In support, the Commission cites *Birmingham Board of Education*, 544 U.S. 167.

In *Birmingham Board of Education*, the male coach of a high school girls' basketball team asserted that his complaint to his employer that the school had discriminated against the girls' team caused the school to retaliate against him. At issue was Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §1681(a),[5] which does not expressly prohibit retaliation. In a 5 to 4 decision, the United States Supreme Court construed Title IX to mean that retaliation against one "who speaks out against sex discrimination" is a form of "intentional 'discrimination' 'on the basis of sex.'" *Birmingham Board of Education*, 544 U.S. at 178. It also established that although the coach did not allege that he was a victim of discrimination, he had standing and a private right of action, under Title IX, to pursue a violation of the statute that impacted third parties, *i.e.*, the girls on the basketball team. The United States Supreme Court reversed the District Court's

---

[5] It states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. §1681(a).

17

dismissal of the coach's complaint and remanded the matter to allow the coach to present evidence to support his claim. *Birmingham Board of Education* has no bearing on this appeal.

First, *Birmingham Board of Education* established that a third party, who is not a victim of discrimination, may pursue a claim under Title IX for opposing an employer's unlawful discrimination. Second, it established that although Title XI does not explicitly proscribe retaliation, it does so implicitly, as a type of sex discrimination prohibited by the statute. *Birmingham Board of Education*, 544 U.S. 167, is inapposite. Section 5(d) of the Act expressly forbids retaliation. Further, the hearing examiner held that Complainant did not establish sex discrimination.

In any event, the hearing examiner did not find, and the record does not support, that Complainant had a good-faith and reasonable belief that she was the victim of sex discrimination. Complainant testified that there was nothing sexual about the floss dance, which was the only potentially sex-related allegation in her October 8, 2019, written complaint.[6] In rejecting Complainant's claim that she was the victim of sex discrimination, the hearing examiner found her testimony inconsistent. Proposed Adjudication at 17.

The Commission erred in concluding that Complainant established the first element of a retaliation claim, *i.e.*, that she was engaged in protected activity under Section 5(d) of the Act, of which Employer was aware prior to terminating her

---

[6] In her email to Rosevear, Complainant mentioned Elchynski's bullying her because she had an "[A]mish background" and "speech problems," which she described as a "disability." C.R., Exhibit C-3, at 1. Complainant did not assert discrimination based on ethnic heritage or disability. Even so, there is no evidence that this email, subject to a non-disclosure agreement, was shared with Grosvenor, who made the furlough decisions. Thus, Complainant's email cannot support a retaliation claim.

18

employment. Her complaints of her co-worker's belittling of her, not being taken seriously, or cutting her off in conversation did not relate to unlawful sex discrimination. Her reports, therefore, did not constitute a protected activity, and Complainant did not establish a *prima facie* case of retaliation.

## II. Improper Application of *McDonnell Douglas*

In its second issue, raised in the alternative, Employer argues that the Commission erred in holding that Complainant established that Employer's stated reason for terminating her employment, *i.e.*, financial losses, was pretextual. In dismissing Complainant's sex discrimination claim, the hearing examiner found that Employer offered "legitimate, non-discriminatory reasons for discharging Complainant," that were not rebutted by Complainant. Proposed Adjudication at 15. In a *volte face*, the hearing examiner found that Complainant established that this same reason was pretextual, when applied to the claim of retaliation. Employer argues that Complainant offered no evidence that its stated reason for her discharge was pretextual.

In response, the Commission reiterates that Employer did not advise Complainant that the need to downsize could lead to layoffs. Only after she complained about Elchynski's behavior was Complainant furloughed. Meanwhile, Elchynski was permitted to continue working.

Upon showing a *prima facie* case of a retaliation claim, the burden shifts to the employer to offer a legitimate, non-retaliatory reason for its action. *Spanish Council of York, Inc.*, 879 A.2d at 399 (citing *McDonnell Douglas*, 411 U.S. 792). Employer's burden in this second part "is one of production, not persuasion, and thus involves no credibility assessment." *Ferraro v. Temple University*, 185 A.3d 396, 401 (Pa. Super. 2008) (citing *Kroptavich v. Pennsylvania Power and Light*

*Company*, 795 A.2d 1048, 1055 (Pa. Super. 2002)) (emphasis in original omitted). The burden then shifts to the complainant to show that the employer's proffered reasons are pretextual. *Ferraro*, 185 A.3d at 402. In the burden-shifting paradigm, "the employer need not prove that the 'tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.'" *Kroptavich*, 795 A.2d at 1055 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

In *Spanish Council of York, Inc.*, two former employees brought racial discrimination and retaliation claims against the employer. This Court affirmed the Commission's conclusion that one of the employees established that he was discharged because he was not a "Latino," *i.e.*, racial discrimination. *Spanish Council of York, Inc.*, 879 A.2d at 394. This Court also affirmed the Commission's conclusion that the then-executive director was a victim of retaliation because she opposed the employer's decision to discharge the employee on racial grounds. We agreed with the Commission that the reason proffered by the employer to discharge the director, *i.e.*, financial distress, was pretextual. The record did not show that the employer was in financial distress. Rather, its finances had improved.

*Circle Bolt & Nut Company, Inc. v. Pennsylvania Human Relations Commission*, 954 A.2d 1265 (Pa. Cmwlth. 2008), involved an employment sex discrimination and retaliation claim. The retaliation claim alleged that the employer transferred the complainant to a different department within 24 hours after she complained about a co-worker, who was singing sexually explicit songs, and then terminated her a few weeks later. The employer maintained that the complainant's transfer was done because it was a good fit for her and that she was fired because she was unable to multitask. The Commission found the proffered reasons

20

pretextual, and we affirmed. The Commission discredited the employer's stated reason for the transfer because the complainant was given a probationary period for the new position. In addition, the complainant's supervisors did not agree that the complainant could not multitask.

To rebut Complainant's retaliation claim, Employer offered the same legitimate, non-discriminatory reason that it offered in response to her sex discrimination claim, *i.e.*, finances. The aquarium's revenue could only sustain a single reptile curator position. On Count I, the hearing examiner found, as fact, that Employer was experiencing actual financial difficulties based on Grosvenor's testimony, supplemented by testimony from Daniels, the business manager, as well as Employer's financial records. The hearing examiner also found that Complainant's testimony did not establish Employer's proffered reason was pretextual on Count I. However, the hearing examiner found that Complainant did prove that this stated reason was pretextual on Count II. The two positions cannot be reconciled. The hearing examiner noted that Complainant was not informed of the investigation result before being laid off, but this is irrelevant to whether Employer was experiencing financial difficulties.

The Commission erred. Even assuming Complainant made a *prima facie* case for retaliation, Employer rebutted that case with a legitimate reason, *i.e.*, finances required furloughs. Complainant's evidence did not show that Employer's proffered financial reason was pretextual.

**Conclusion**

The Commission erred in concluding that Complainant established a *prima facie* case of retaliation because Complainant did not satisfy the first element, which is that she was engaged in protected activity of which Employer was aware

21

prior to terminating her employment.  In the alternative, the Commission also erred in concluding that Complainant offered substantial evidence that the reason offered by Employer for terminating her employment, *i.e.*, financial losses, was pretextual. We therefore reverse the Commission's October 28, 2024, order.


_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Electric City Aquarium & Reptile    :
Den, LLC,    :
          Petitioner    :
   :
        v.    :    No. 1551 C.D. 2024
   :
Pennsylvania Human Relations    :
Commission,    :
          Respondent  :

# **O R D E R**

AND NOW, this 20th day of November, 2025, the order of the Pennsylvania Human Relations Commission, dated October 28, 2024, in the above-captioned matter, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita